**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: ACTOS PRODUCTS LIABILITY LITIGATION | ) ) ) MDL No. 6:11-md-2299 |
| KENNETH BORING, et al. | ) ) JUDGE DOHERTY |
| Plaintiffs, | ) ) MAGISTRATE JUDGE HANNA ) ) Civil Action No.: _____ |
| vs. | ) ) |
| TAKEDA PHARMACEUTICALS AMERICA, INC.; | ) **BUNDLED COMPLAINT AND** ) **DEMAND FOR JURY TRIAL** ) |
| TAKEDA PHARMACEUTICALS U.S.A., INC. (f/k/a TAKEDA PHARMACEUTICALS NORTH AMERICA, INC.); | ) ) ) ) |
| TAKEDA PHARMACEUTICAL COMPANY LIMITED; | ) ) ) |
| TAKEDA GLOBAL RESEARCH & DEVELOPMENT CENTER, INC.; | ) ) ) |
| TAKEDA PHARMACEUTICALS INTERNATIONAL, INC.; | ) ) ) |
| ELI LILLY & COMPANY; | ) ) |
| Defendants. | ) ) ) |

## COMPLAINT AT LAW

Plaintiffs, by and through their attorneys, bring this action against TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA PHARMACEUTICALS U.S.A., INC. (f/k/a TAKEDA PHARMACEUTICALS NORTH AMERICA, INC.), TAKEDA PHARMACEUTICAL COMPANY LIMITED, TAKEDA GLOBAL RESEARCH &

#4709379.1

DEVELOPMENT CENTER, INC., TAKEDA PHARMACEUTICALS INTERNATIONAL, INC., (collectively, "TAKEDA") and ELI LILLY & COMPANY ("LILLY" and, together with TAKEDA, "Defendants").

## NATURE OF THE CASE

1.      This action seeks to recover damages for injuries caused to Plaintiffs as the direct and proximate result of the wrongful conduct of the Defendants in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of the widely used diabetes prescription drug Actos (pioglitazone), a prescription medication used to improve blood sugar (glucose) control in adults with Type 2 diabetes mellitus. Actos is sold as a single ingredient product under the brand name Actos.

## SUBJECT MATTER JURISDICTION & VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy as to the Plaintiffs exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have their principal places of business in states other than the states in which the Plaintiffs reside.

3.      This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper within this District pursuant to 28 U.S.C. § 1391 because it is a judicial district where Defendants are subject to personal jurisdiction in accordance with 28 U.S.C. § 1391(c) and pursuant to the April 9, 2012 Case Management Order entered by the Court in the matter of *In Re: Actos (Pioglitazone) Products Liability Litigation, MDL Docket No. 6:11-2299.*

**PARTY PLAINTIFFS**

5.      Plaintiffs KENNETH BORING and OLIVE BORING are adult residents of the State of FLORIDA, County of BREVARD.   Plaintiff KENNETH BORING was prescribed Actos and did ingest Actos.  Plaintiff KENNETH BORING has suffered damages as a result of Defendants' illegal and wrongful conduct described below.  Plaintiff OLIVE BORING is the lawful spouse of KENNETH BORING and, as such, was and is entitled to the comfort, enjoyment, society and services of her spouse.  Plaintiff OLIVE BORING's loss of consortium claims are alleged in the Ninth Cause of Action.

6.      Plaintiff W. HOWARD BURKE and EUGENIA BURKE are adult residents of the State of GEORGIA, County of HABERSHAM.   Plaintiff W. HOWARD BURKE was prescribed Actos and did ingest Actos.  Plaintiff W. HOWARD BURKE has suffered damages as a result of Defendants' illegal and wrongful conduct described below.   Plaintiff EUGENIA BURKE is the lawful spouse of W. HOWARD BURKE and, as such, was and is entitled to the comfort, enjoyment, society and services of her spouse.  Plaintiff EUGENIA BURKE's loss of consortium claims are alleged in the Ninth Cause of Action.

**PARTY DEFENDANTS AND PERSONAL JURISDICTION**

7.      Upon information and belief, Defendant TAKEDA PHARMACEUTICALS U.S.A., INC. (formerly known as TAKEDA PHARMACEUTICALS NORTH AMERICA, INC.), is a Delaware Corporation, which has its principal place of business at One Takeda Parkway, Deerfield, Illinois 60015. As part of its business, TAKEDA PHARMACEUTICALS U.S.A., INC. is involved in the research, development, sales and marketing of pharmaceutical products, including Actos and pioglitazone hydrochloride.

8.    Upon information and belief, Defendant TAKEDA PHARMACEUTICALS AMERICA, INC. is a Delaware Corporation, which has its principal place of business at One Takeda Parkway, Deerfield, Illinois 60015.

9.    Upon information and belief, Defendant TAKEDA PHARMACEUTICALS AMERICA, INC. is a wholly owned subsidiary of TAKEDA PHARMACEUTICALS U.S.A., INC.  As part of its business, TAKEDA PHARMACEUTICALS AMERICA., INC. is involved in the research, development, sales and marketing of pharmaceutical products, including Actos and pioglitazone hydrochloride.

10.    Upon information and belief, Defendant TAKEDA GLOBAL RESEARCH AND DEVELOPMENT CENTER, INC. is an Illinois Corporation, which has its principal place of business at One Takeda Parkway, Deerfield, Illinois 60015. As part of its business, TAKEDA GLOBAL RESEARCH AND DEVELOPMENT CENTER, INC. is involved in the research, development, sales and marketing of pharmaceutical products, including Actos and pioglitazone hydrochloride.

11.    Upon information and belief, Defendant TAKEDA PHARMACEUTICALS INTERNATIONAL, INC. is an Illinois Corporation, which has its principal place of business at One Takeda Parkway, Deerfield, Illinois 60015. As part of its business, TAKEDA PHARMACEUTICALS INTERNATIONAL, INC. is involved in the research, development, sales and marketing of pharmaceutical products, including Actos and pioglitazone hydrochloride.

12.    Upon information and belief, Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED is a Japanese corporation having a principal place of business at 1-1, Doshomachi 4-chome, Chuo-ku, Osaka, 540-8645, Japan. As part of its business, TAKEDA

PHARMACEUTICAL COMPANY LIMITED is involved in the research, development, sales, and marketing of pharmaceutical products, including Actos and pioglitazone hydrochloride.

13.     Upon information and belief, Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED is the parent/holding company of Defendants TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA GLOBAL RESEARCH AND DEVELOPMENT CENTER, INC., and TAKEDA PHARMACEUTICALS INTERNATIONAL, INC.

14.     Upon information and belief, at all relevant times, Defendant TAKEDA PHARMACEUTICAL COMPANY LIMITED exercised and exercises dominion and control over Defendants TAKEDA PHARMACEUTICALS U.S.A., INC., TAKEDA PHARMACEUTICALS AMERICA, INC., TAKEDA GLOBAL RESEARCH AND DEVELOPMENT CENTER, INC., and TAKEDA PHARMACEUTICALS INTERNATIONAL, INC.

15.     Upon information and belief, Defendant ELI LILLY AND COMPANY is an Indiana corporation with its principal place of business located at Lilly Corporate Center, Indianapolis, Indiana 46285 and is involved in the research, development, sales, and marketing of pharmaceutical products, including Actos and pioglitazone hydrochloride.

16.     Upon information and belief, each of the Defendants were the agent, servant, employee and/or joint venturer of the other co-Defendants, and each Defendant was acting in the full course, scope and authority of said agency, service, employment and/or joint venture.

17.     Upon information and belief, at all times mentioned herein, Defendants were also known as, formerly known as and/or were the successors and/or predecessors in

interest/business/product line/or a portion thereof, assigns, a parent, a subsidiary (wholly or partially owned by, or the whole or partial owner), affiliate, partner, co-venturer, merged company, alter egos, agents, equitable trustees and/or fiduciaries of and/or were members in an entity or entities engaged in funding, researching, studying, manufacturing, fabricating, designing, developing, labeling, assembling, distributing, supplying, leasing, buying, offering for sale, selling, inspecting, servicing, contracting others for marketing, warranting, rebranding, manufacturing for others, packaging and advertising Actos.

18.     Defendants are liable for the acts, omissions and tortious conduct of its successors and/or predecessors in interest/business/product line/or a portion thereof, assigns, parent, subsidiary, affiliate, partner, co-venturer, merged company, alter ego, agent, equitable trustee, fiduciary and/or its alternate entities in that Defendants enjoy the goodwill originally attached to each such alternate entity, acquired the assets or product line (or portion thereof), and in that there has been a virtual destruction of plaintiffs' remedy against each such alternate entity, and that each such defendant has the ability to assume the risk-spreading role of each such alternate entity.

19.     Upon information and belief, Defendants were and are authorized to do and are doing business in the State of Louisiana and in each Plaintiff's State of residence.

20.     Upon information and belief, at all relevant times, Defendants were engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce and into the State Louisiana and each Plaintiff's State of residence, either directly or indirectly, through third parties or related entities, its products, including Actos and pioglitazone hydrochloride.

21.     Upon information and belief, at relevant times, Defendants conducted regular and sustained business and engaged in substantial commerce and business activity in the State of Louisiana and in each Plaintiff's State of residence, which included but was not limited to selling, marketing and distributing its products, including Actos and pioglitazone hydrochloride in said states.

22.     Upon information and belief, at all relevant times, Defendants expected or should have expected that their acts would have consequences within the United States of America including the State of Louisiana and in each Plaintiff's State of residence, and Defendants derived and derive substantial revenue from interstate commerce.

23.     Upon information and belief, at all relevant times, Defendants have transacted and conducted business in the State of Louisiana and in each Plaintiff's State of residence and/or contracted to supply goods and services within the State and these causes of action have arisen from same.

24.     Upon information and belief, at all relevant times, Defendants committed tortious acts throughout the United States, including, by way of example, the States of Louisiana and each Plaintiff's State of residence out of which these causes of action arise.

## GENERAL FACTUAL ALLEGATIONS

25.     Defendants, directly or through their agents, apparent agents, servants or employees, designed, manufactured, marketed, advertised, distributed, promoted and sold Actos for the treatment of Type 2 diabetes mellitus to the general public and to the Plaintiffs.

26.     TAKEDA received FDA approval for Actos, also known as pioglitazone hydrochloride, on July 15, 1999 for treatment of Type 2 diabetes mellitus.

27.     TAKEDA and LILLY jointly launched Actos in the United States in 1999.

28.     On April 20, 2006, TAKEDA announced the conclusion of its collaboration in the United States between TAKEDA and LILLY to promote and market Actos.  TAKEDA described this partnership as a "great success" and "mutually beneficial to both companies."

29.     Actos is in a class of insulin-sensitizing diabetes agents known as thiazolidinediones ("TZDs").

30.     Actos exerts its antihyperglycemic effect only in the presence of endogenous insulin.  Therefore, Actos is only used to treat Type 2 diabetes and should not be used to treat Type 1 diabetes.

31.     Actos is also sold in combination with metformin (Actoplus Met, Actoplus Met XR) and in combination with glimepiride (Duetact).

32.     In 2005, the results of the PROactive (PROspective PioglitAzone Clinical Trial In MacroVascular Events) three-year study were published.  PROactive prospectively looked at the impact in total mortality and macrovascular morbidity using Actos.  Dormandy J.A., et al. *Secondary Prevention of Macrovascular Events in Patients with Type II Diabetes in the PROactive Study (PROspective PioglitAzone Clinical Trial In MacroVascular Events): a Randomised Controlled Trial*, Lancet, 266:1279-1286 (2005) (the "Dormandy paper").

33.     Though the PROactive study was looking at cardiovascular events and outcomes, the researchers and Defendants became aware that there was a statistically significant demonstrated higher percentage of bladder cancer cases in patients receiving Actos versus comparators.

34.     Neither during the study nor in the actual final Dormandy paper did the researchers or the Defendants publish the statistically significant increases of bladder cancer in individuals ingesting Actos.

35.     This information was not included in the published Dormandy paper.

36.     Further, upon information and belief, a separate three-year liver safety study was also performed and, according to the FDA, that study also demonstrated a higher percentage of bladder cancer cases in patients receiving Actos versus comparators.

37.     Defendants willfully, wantonly and with malice withheld the knowledge of increased risk of cancer in users of Actos to prevent any chances of its products' registrations being delayed or rejected by the FDA.

38.     On September 17, 2010, the FDA issued a Safety Announcement stating it was undertaking a review of the data from an ongoing, ten-year epidemiological study being conducted by Kaiser Permanente to evaluate the association between Actos and bladder cancer. The planned five-year interim analysis demonstrated that the risk of bladder cancer increases with increasing dose and duration of Actos use.

39.     Despite FDA finding that Actos is linked to a statistically significant increase in the risk for developing bladder cancer, Robert Spanheimer, Vice President of Medical and Scientific Affairs for Takeda, claimed to Reuters that the Kaiser Permanente study has not shown a risk to patients of bladder cancer or other cancers from Actos.

40.     In early 2011, the American Diabetes Association published *Assessing the Association of Pioglitazone Use and Bladder Cancer Through Drug Adverse Event Reporting*, Piccinni, et al., Diabetes Care, 34:1369-1371 (June 2011), published ahead of print on April 22,

2011.  This study looked at adverse-event reports made to the FDA between 2004 and 2009.  The conclusion of that study was that "[i]n agreement with preclinical and clinical studies, AERS analysis is consistent with an association between pioglitazone and bladder cancer.  This issue needs constant epidemiologic surveillance and urgent definition by more specific studies."

41.    On June 9, 2011, the European Medicines Agency announced that it had been informed by the French Medicines Agency of its decision to suspend the use of pioglitazone-containing medicines (Actos, Competact) in France while awaiting the outcome of the ongoing European review.

42.    Upon information and belief, France's decision was based upon a retrospective cohort study in France using the French National Health Insurance Plan, which demonstrated a statistically significant increase in the risk for bladder cancer in males exposed to Actos for more than one year.  The French cohort included 1.5 million patients with diabetes that were followed for 4 years (2006-2009).

43.    On June 10, 2011, Germany's Federal Institute for Drug and Medical Devices ("BfArM") suspended the use of Actos based on the French study.  BfArM recommended that doctors should not put new patients on pioglitazone.

44.    Following the recall in France, Takeda Limited refused to issue a recall of Actos in the United States, thereby continuing to subject American citizens to the significant risk of developing bladder cancer while ensuring that users in France and Germany were no longer subject to this risk.

45.    On June 15, 2011, the FDA informed the public that "use of the diabetes medication Actos (pioglitazone) for more than one year may be associated with an increased risk of bladder cancer."

46.    The FDA reported that the risk of bladder cancer increased with increasing dose and duration of pioglitazone use.  When compared to persons never exposed to pioglitazone, exposure to pioglitazone therapy for longer than 12 months was associated with a 40% increase in risk.  Based on this data, the FDA calculated that therapy with Actos for longer than 12 months was associated with 27.5 excess cases of bladder cancer per 100,000 person-years follow-up, compared to those who never used pioglitazone.

47.    The FDA ordered that the Actos label be changed to reflect this information in the Warnings and Precautions section of the label for pioglitazone-containing medicines, and that patient Medication Guides be updated to include information regarding the risk of bladder cancer.

48.    The FDA further recommended, on June 15, 2011, that healthcare physicians discontinue pioglitazone use in patients with active bladder cancer.

49.    On July 12, 2011, Takeda Limited issued a recall on Actos in France.

50.    On August 4, 2011, the FDA announced approval for an updated label to include information regarding the risk of bladder cancer in the Warnings and Precautions sections, as well as the patient Medication Guide.

51.    Prior to applying for and obtaining approval of Actos, Defendants knew or should have known that human consumption of Actos was associated with and/or would cause the induction of bladder cancer.  Defendants possessed pre-clinical scientific studies, including

animal evidence, which Defendants knew or should have known was a signal of bladder cancer risks that needed further testing and study prior to the introduction of Actos to the market.

52.     Upon information and belief, despite bladder cancer findings in animal model carcinogenicity studies and other pre-clinical evidence, Defendants failed to adequately conduct complete and proper testing of Actos prior to filing their New Drug Application for Actos.

53.     Upon information and belief, additional bladder cancer evidence from human clinical trials also became known to Defendants in the early 2000s.

54.     Consumers, including Plaintiffs, who used Actos for treatment of Type 2 diabetes, have several alternative products available to treat the condition and have not been adequately warned about the significant risks associated with long-term Actos use.

55.     As the manufacturers and distributors of Actos, Defendants knew or should have known that Actos use for longer than twelve months was associated with bladder cancer.

56.     For over 10 years and to date, Defendants willfully withheld, concealed and failed to completely disclose its knowledge that Actos was associated with or could cause bladder cancer or its knowledge that it had failed to fully study and test regarding that risk.

57.     As a result of the defective nature of Actos, persons who were prescribed and ingested Actos for more than twelve months, including Plaintiffs, were at increased risk for developing bladder cancer, have suffered, and may continue to suffer, from bladder cancer.

58.     As a result of the defective nature of Defendants' product, Actos, persons who were prescribed and ingested Actos for more than twelve months, including Plaintiffs, developed bladder cancer, have suffered and may continue to suffer from bladder cancer.

59.     Despite its knowledge of this dangerous side effect that can result from Actos use, Defendants chose not to warn patients, physicians and the medical community about the risk of bladder cancer.  Instead, Defendants willfully, wantonly and with malice withheld the knowledge of increased risk of cancer in users of Actos to prevent any chances of their product's registrations being delayed or rejected by FDA.

60.     The Defendants' failure to disclose information that they possessed regarding the increased risk associated with the use Actos for bladder cancer further rendered warnings for this medication inadequate.

61.     Upon information and belief, Defendants ignored the association between the use of Actos and pioglitazone hydrochloride and the risk of developing bladder cancer.

62.     As a result of Defendants' actions, Plaintiffs and Plaintiffs' physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this Complaint, and that those risks were the direct and proximate result of Defendants' conduct.

63.     Plaintiffs would not have used Actos had Defendants properly disclosed the risks associated with its long-term use.

64.     Plaintiffs were unaware of and did not discover that the development of bladder cancer could be related to the ingestion of Actos prior to 2011.

65.     As a result of Defendants' actions, omissions and inactions, Plaintiffs were injured due to their ingestion of Actos, which caused and may continue to cause Plaintiffs various injuries and damages relating to bladder cancer.  Plaintiffs accordingly seek damages associated with these injuries.

**EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS**

66.     The running of any statute of limitations has been tolled by reason or Defendants' conduct.   Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Plaintiffs' prescribing physicians the true risks associated with Actos and pioglitazone hydrochloride.

67.     As a result of Defendants' actions, Plaintiffs and Plaintiffs' prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks alleged herein and that those risks were the direct and proximate cause of Defendants' acts and omissions.

68.     Furthermore, Defendants are estopped from relying on any statute of limitations because of their concealment of the truth, quality and nature of Actos and pioglitazone hydrochloride.  Defendants were under a duty to disclose the true character, quality and nature of Actos because this was non-public information over which Defendants had and continue to have exclusive control, and because the Defendants knew that this information was not available to Plaintiffs, their medical providers and/or to their health facilities.

69.     Defendants had the ability to spend, and did in fact spend, enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonably known risks.  Neither Plaintiffs nor their medical professionals could have conducted studies to determine the nature, extent and identity of related health risks, and, therefore, they were forced to rely on Defendants' misrepresentations.

**FIRST CAUSE OF ACTION**
**NEGLIGENCE**

70.     Plaintiffs re-allege and incorporate by reference, as though fully set forth at length

herein, all of the allegations of all of the preceding paragraphs.

71.     Defendants had a duty to Plaintiffs to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of Actos and pioglitazone hydrochloride into the stream of commerce, including a duty to assure that Actos and pioglitazone hydrochloride would not cause users to suffer unreasonable, dangerous side effects such as cancer.

72.     Defendants failed to exercise ordinary care and/or were reckless in designing, researching, manufacturing, marketing, supplying, promoting, packaging, selling, testing, quality assurance, quality control, and/or distribution of Actos into interstate commerce in that Defendants knew or should have known that using Actos caused a risk of unreasonable, dangerous side effects, including bladder cancer.

73.     Despite the fact that Defendants knew or should have known that Actos was associated with and caused bladder cancer, Defendants continued to market, manufacture, distribute and/or sell Actos to consumers, including the Plaintiffs.

74.     Defendants knew or should have known that consumers such as the Plaintiffs would suffer injury as a result of said Defendants' failure to exercise ordinary care, as set forth above.

75.     Defendants' negligence and/or recklessness was a substantial factor and legal and proximate cause of Plaintiffs', injuries, physical pain and suffering, mental anguish, and loss of enjoyment of life.

76.     As a foreseeable, direct and proximate result of the aforesaid conduct of Defendants, Plaintiffs suffered economic losses and special damages including, but not limited

to, loss of earnings and medical expenses.

77.     In particular, Plaintiffs will show that Defendants' intentional, grossly wanton acts and omissions were substantial factors in causing Plaintiffs' diseases and injuries.  As Defendants' conduct was and is vile, base, willful, malicious, oppressive, and outrageous, and as said Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiffs, Plaintiffs seek punitive damages for the sake of example and by way of punishing Defendants.

78.     Plaintiffs will show that Defendants acted with oppression, fraud, and malice, and Plaintiffs are therefore entitled to punitive damages to deter the Defendants, and each of them, and others from engaging in similar conduct in the future.  The wrongful conduct described herein was undertaken with the advance knowledge, authorization, or ratification of an officer, director, or managing agent of Defendants, and each of them.

79.     Plaintiffs maintain and reserve their rights to plead additional facts, theories of liability, causes of action in their Complaint, and/or to present evidence pertaining to the acts and omissions of Defendants as may be subsequently identified through discovery and investigation in this matter.  Plaintiffs reserve the right to present such evidence at the time of trial based upon such subsequently discovered acts, omissions or damages that are heretofore unknown or unidentified prior to the date of service of this Complaint and maintains and reserves their rights to thereafter move the court to conform pleadings to proof in this matter.

## SECOND CAUSE OF ACTION
## STRICT LIABILITY - FAILURE TO WARN

80.     Plaintiffs re-allege and incorporate by reference, as though fully set forth at length

herein, all of the allegations of all of the preceding paragraphs.

81.     Defendants researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, marketed, and/or introduced Actos into the stream of commerce, and in the course of same, directly advertised or marketed Actos and pioglitazone hydrochloride to consumers or persons responsible for consumers, and therefore had a duty to Plaintiffs and Plaintiffs' physicians to warn of risks associated with the use of Actos.

82.     Defendants had a duty to warn of adverse drug reactions, which they know or have reason to know can be caused by the use of Actos and pioglitazone hydrochloride and/or are associated with the use of Actos and pioglitazone hydrochloride.

83.     The Actos and pioglitazone hydrochloride manufactured and/or supplied by the Defendants was defective due to inadequate post-marketing warnings and/or instructions because, after the said Defendants knew or should have known of the risks of bladder cancer from Actos use, they failed to provide adequate warnings to consumers of the product, including Plaintiffs and Plaintiffs' physicians, and instead continued to aggressively promote Actos.

84.     Due to the inadequate warning regarding bladder cancer, Actos was in a defective condition and unreasonably dangerous at the time that it left the control of the Defendants.

85.     Plaintiffs were not able to discover, nor could they have discovered through the exercise of reasonable care, the defective nature of Actos.  Further, in no way could Plaintiffs have known that Defendants had designed, developed, and manufactured Actos in such a way as to increase the risk of harm or injury to the recipients of Actos.

86.     Actos is defective in design because of its propensity to cause bladder cancer and other indefinite injuries after discontinuation of use.

87.    Defendants failed to develop and make available alternative products that were designed in a safe or safer manner, even though such products were feasible and marketable at the time Defendants sold Actos to Plaintiffs.

88.    Defendants failed to adequately warn Plaintiffs and Plaintiffs' prescribing physicians of human and animal results in preclinical studies pertaining to bladder cancer and Actos.

89.    The failure of Defendants to adequately warn Plaintiffs and Plaintiffs' prescribing physicians of a bladder cancer risk prevented Plaintiffs' prescribing physicians and Plaintiffs from correctly and fully evaluating the risks and benefits of Actos and pioglitazone hydrochloride.

90.    Had Plaintiffs been adequately warned of the potential life-threatening side effects of the Defendants' drug Actos and pioglitazone hydrochloride, Plaintiffs would not have purchased or taken Actos and could have chosen to request other treatments or prescription medications.

91.    Upon information and belief, had Plaintiffs' prescribing physicians been adequately warned of the potential life-threatening side effects of the Defendants' drug Actos and pioglitazone hydrochloride, Plaintiffs' prescribing physicians would have discussed the risks of bladder cancer and Actos with the Plaintiffs and/or would not have prescribed it.

92.    As a foreseeable and proximate result of the aforementioned wrongful acts and omissions of Defendants, Plaintiffs were caused to suffer the aforementioned injuries and damages.

93.     The failure to warn by Defendants was a substantial factor and legal and proximate cause of the injuries and damages thereby sustained by Plaintiffs, and said Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiffs, and such intentional acts and omissions were substantial factors in causing their disease and injuries.

94.     As a foreseeable, direct and proximate result of the aforesaid conduct of Defendants, Plaintiffs suffered severe and permanent injuries to their persons, and Plaintiffs suffered damages as alleged above.

95.     In particular, Plaintiffs will show that Defendants' intentional, grossly wanton acts and omissions were substantial factors in causing Plaintiffs' diseases and injuries.   As Defendants' conduct was and is vile, base, willful, malicious, oppressive, and outrageous, and as said Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiffs, Plaintiffs seek punitive damages for the sake of example and by way of punishing Defendants.

## THIRD CAUSE OF ACTION
## STRICT LIABILITY - DEFECTIVE DESIGN

96.     Plaintiffs re-allege and incorporate by reference, as though fully set forth at length herein, all of the allegations of all of the preceding paragraphs.

97.     Actos is defective in its design or formulation in that it is not reasonably fit, suitable or safe for its intended purpose, and/or that its foreseeable risks exceed the benefits associated with its design and formulation.   The subject product was unreasonably dangerous in design.   At all times material to this action, Actos was expected to reach, and did reach,

consumers in Plaintiffs' state of citizenship and throughout the United States, including Plaintiffs, without substantial change in the condition in which it was sold.

98.     At all times material to this action, Actos was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

> a.     When placed in the stream of commerce, Actos contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting Plaintiffs to risks that exceeded the benefits of the subject product, including but not limited to developing bladder cancer and other serious injuries and side effects.
>
> b.     When placed in the stream of commerce, Actos was defective in design and formulation, making the use of Actos more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with the other medications and similar drugs on the market to treat type 2 diabetes;
>
> c.     Actos' design defects existed before it left the control of the Defendants;
>
> d.     Actos was insufficiently tested;
>
> e.     Actos caused harmful side effect that outweighed any potential utility; and
>
> f.     Actos was not accompanied by adequate instructions and/or warnings to fully apprise consumers, including Plaintiffs herein, of the full nature and extent of the risks and side effects associated with its use, thereby rendering Defendants liable to Plaintiffs.

99.     In addition, at the time the subject product left the control of the Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Plaintiffs' injuries without impairing the reasonably anticipated or intended function of the product.  These safer alternative designs were economically and technologically

feasible, and would have prevented or significantly reduced the risk of Plaintiffs' injuries without substantially impairing the product's utility.

## FOURTH CAUSE OF ACTION
## MANUFACTURING DEFECT

100.    Plaintiffs re-allege and incorporate here by reference, as though fully set forth at length herein, all of the allegations of all of the preceding paragraphs.

101.    At all times material to this action, Defendants were engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Actos.

102.    At all times material to this action, Actos was expected to reach, and did reach, consumers in Plaintiffs' states of citizenship and throughout the United States, including Plaintiffs herein without substantial change in the condition in which it was sold.

103.    At all times material to this action, Actos was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

      a.    When placed in the stream of commerce, Actos contained manufacturing defects which rendered the subject product unreasonably dangerous;

      b.    The subject product's manufacturing defects occurred while the product was in the possession and control of the Defendants;

      c.    The subject product was not made in accordance with the Defendants' specification or performance standards; and

      d.    The subject product's manufacturing defects existed before it left the control of the Defendants.

104.    The subject product manufactured and/or supplied by Defendant was defective in construction or composition in that, when it left the hands of Defendant, it deviated in a material way from Defendants' manufacturing performance standards and/or it differed from otherwise identical products manufactured to the same design formula. In particular, the product is not safe, has numerous and serious side effects and causes severe and permanent injuries including, but not limited to, developing bladder cancer. The product was unreasonably dangerous in construction or composition.

## FIFTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

105.    Plaintiffs re-allege and incorporate here by reference, as though fully set forth at length herein, all of the allegations of all of the preceding paragraphs.

106.    Defendants warranted that Actos was safe for its intended use and as otherwise described in this Complaint.  Actos did not conform to these express representations, including, but not limited to, the representation that it was well accepted in patient and animal studies, the representation that it was safe, the representation that it did not have high and/or unacceptable levels of life-threatening side-effects, like bladder cancer, and the representation that it would improve health, maintain health, and potentially prolong life.

107.    The express warranties represented by the Defendants were a part of the basis for Plaintiffs' use of Actos and Plaintiffs relied on these warranties in deciding to use Actos.

108.    At the time of the making of the express warranties, the Defendants had knowledge of the purpose for which the Actos and pioglitazone hydrochloride was to be used, and warranted same to be in all respects safe, effective and proper for such purpose. The subject

product was unreasonably dangerous because it failed to conform to an expressed warranty of the defendant as provided by La.R.S.9:2800.58.

109.    Defendants breached the above described express warranty in that Actos does not conform to these express representations because Actos is not safe or effective and may produce serious side effects, including among other things bladder cancer, degrading Plaintiffs' health, and shrinking their life expectancy.

110.    The breaches of warranty by Defendants were substantial factors and legal and proximate causes of Plaintiffs' injuries and damages thereby sustained by Plaintiffs, and said Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiffs, and such intentional acts and omissions were substantial factors in causing their diseases and injuries.

111.    As a foreseeable, direct and proximate result of the aforesaid conduct of Defendants, Plaintiffs suffered severe and permanent injuries.

112.    In particular, Plaintiffs will show that Defendants' intentional, grossly wanton acts and omissions were substantial factors in causing Plaintiffs' diseases and injuries.  As Defendants' conduct was and is vile, base, willful, malicious, oppressive, and outrageous, and as said Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiffs, Plaintiffs seek punitive damages for the sake of example and by way of punishing Defendants.

**SIXTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY FOR A PARTICULAR PURPOSE**

113.    Plaintiffs re-allege and incorporate here by reference, as though fully set forth at length herein, all of the allegations of all of the preceding paragraphs.

114.    At all times herein mentioned, the Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold Actos and pioglitazone hydrochloride, to treat Type 2 diabetes mellitus.

115.    The Defendants impliedly represented and warranted to the users of Actos that Actos was safe and fit for the particular purpose for which it was to be used, namely treating diabetes, improving health, maintaining health, and potentially prolonging life.

116.    These representations and warranties aforementioned were false, misleading, and inaccurate in that Actos and pioglitazone hydrochloride were unsafe, degraded Plaintiffs' health and shortened their life expectancy.

117.    Plaintiffs relied on the implied warranty of fitness for a particular use and purpose.

118.    Plaintiffs reasonably relied upon the skill and judgment of Defendants as to whether Actos was safe and fit for its intended use.

119.    Actos and pioglitazone hydrochloride were injected into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

120.    Defendants breached the aforesaid implied warranty, as their drug Actos was not fit for its intended purposes and uses.

121.    The breaches of warranty by Defendants described in this cause of action were substantial factors and legal and proximate causes of the injuries and damages sustained by Plaintiffs.

122.    The breaches of warranty by Defendants were substantial factors and legal and proximate causes of the injuries and damages thereby sustained by Plaintiffs, and said Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiffs, and such intentional acts and omissions were substantial factors in causing their diseases and injuries.

123.    As a foreseeable, direct and proximate result of the aforesaid conduct of Defendants, Plaintiffs suffered severe and permanent injuries to their person, and Plaintiffs suffered damages as alleged in this Complaint.

124.    In particular, Plaintiffs will show that, as alleged here in this cause of action and throughout this Complaint, that such intentional, grossly wanton acts and omissions by Defendants were substantial factors in causing Plaintiffs' diseases and injuries.  Because the above-referenced conduct of Defendants was and is vile, base, willful, malicious, oppressive, and outrageous, and as said Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiffs such that Plaintiffs, for the sake of example, and by way of punishing said Defendants, seek punitive damages according to proof.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

125.    Plaintiffs re-allege and incorporate here by reference, as though fully set forth at length herein, all of the allegations of all of the preceding paragraphs.

126.     Defendants manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold Actos and pioglitazone hydrochloride to treat Type 2 diabetes mellitus.

127.     Defendants marketed, sold and distributed Actos and knew and promoted the use for which Actos was being used by Plaintiffs and impliedly warranted to Plaintiffs that Actos was of merchantable quality and fit for the ordinary purpose for which it was intended, namely treating diabetes, improving health, maintaining health, and potentially prolonging life.

128.     These representations and warranties were false, misleading, and inaccurate in that Actos and pioglitazone hydrochloride were unsafe, degraded Plaintiffs' health and shortened their life expectancy.

129.     Plaintiffs reasonably relied on the skill, expertise and judgment of the Defendants and their representations as to the fact that Actos was of merchantable quality.

130.     The Actos and pioglitazone hydrochloride manufactured and supplied by the Defendants was not of merchantable quality, as warranted by the Defendants, in that the drug had dangerous and life-threatening side-effects and was thus not fit for the ordinary purpose for which it was intended.

131.     The breaches of warranty by Defendants were substantial factors and legal and proximate causes of the injuries and damages thereby sustained by Plaintiffs, and said Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiffs, and such intentional acts and omissions were substantial factors in causing their disease and injuries.

132.    The breaches of warranty by Defendants were substantial factors and legal and proximate causes of the injuries and damages thereby sustained by Plaintiffs, and said Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiffs, and such intentional acts and omissions were substantial factors in causing their disease and injuries.

133.    As a foreseeable, direct and proximate result of the aforesaid conduct of Defendants, Plaintiffs suffered severe and permanent injuries to their person, and Plaintiffs suffered damages as alleged above.

134.    In particular, Plaintiffs will show, as alleged here in this cause of action and throughout this Complaint, that such intentional, grossly wanton acts and omissions by Defendants were substantial factors in causing their diseases and injuries.  As the above referenced conduct complained of in this Complaint of said Defendants was and is vile, base, willful, malicious, oppressive, and outrageous, and as said Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiffs, such that Plaintiffs for the sake of example, and by way of punishing said Defendants, seek punitive damages according to proof.

## EIGHTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION

135.    Plaintiffs re-allege and incorporate here by reference, as though fully set forth at length herein, all of the allegations of all of the preceding paragraphs.

136.    Defendants, and each of them, from the time that Actos and pioglitazone hydrochloride was first tested, studied, researched, manufactured, marketed and distributed, and up to the present, made false representations to Plaintiffs, Plaintiffs' health care providers and the

general public including, but not limited to, the misrepresentation that Actos and pioglitazone hydrochloride was safe, fit, and effective for human consumption.

137.    At all times relevant hereto, Defendants, and each of them, conducted a sales and marketing campaign to promote the sale of Actos and pioglitazone hydrochloride and willfully deceive Plaintiffs, and Plaintiffs' health care providers, and the general public as to the health risks and consequences of the use of Actos and pioglitazone hydrochloride.

138.    Defendants made the foregoing misrepresentations without any reasonable ground for believing them to be true.  These misrepresentations were made directly by Defendants, by sales representatives and other authorized agents of said Defendants, and in publications and other written materials directed to physicians, patients, and the general public, with the intention of inducing reliance and the prescription, purchase, and use of Actos and pioglitazone hydrochloride.

139.    The foregoing representations by Defendants, and each of them, were in fact false, in that Actos and pioglitazone hydrochloride is not, and at all relevant times alleged herein, was not safe, fit, and effective for human consumption, and that the use of Actos and pioglitazone hydrochloride is hazardous to health, and that Actos and pioglitazone hydrochloride has a significant propensity to cause serious injuries to users including, but not limited to, the injuries suffered by Plaintiffs as described herein. The foregoing misrepresentations by Defendants, and each of them, were made with the intention of inducing reliance and inducing the prescription, purchase, and use of Actos and pioglitazone hydrochloride.

140.    In reliance on the misrepresentations by Defendants, and each of them, Plaintiffs were induced to purchase and use Actos and pioglitazone hydrochloride.  If Plaintiffs had known

of the true facts concealed by Defendants, Plaintiffs would not have used Actos and pioglitazone hydrochloride.  The reliance by Plaintiffs upon Defendants' misrepresentations was justified because such misrepresentations were made by Defendants through individuals and entities that were in a position to know the true facts.

141.    As a result of the foregoing negligent misrepresentations by Defendants, and each of them, Plaintiffs suffered injuries and damages as described above. Defendants' conduct was and is vile, base, willful, malicious, oppressive, and outrageous, and said Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiffs such that, Plaintiffs, for the sake of example, and by way of punishing said Defendants, seek punitive damages according to proof.

**NINTH CAUSE OF ACTION**
**LOSS OF CONSORTIUM**

142.    Plaintiffs re-allege and incorporate here by reference, as though fully set forth at length herein, all of the allegations of all of the preceding paragraphs.

143.    Plaintiff KENNETH BORING is legally married to Plaintiff OLIVE BORING and, at all relevant times alleged herein the Plaintiffs were, and are, legally married to one another.

144.    Plaintiff W. HOWARD BURKE is legally married to Plaintiff EUGENIA BURKE and, at all relevant times alleged herein the Plaintiffs were, and are, legally married to one another.

145.    As a direct and proximate result of the injuries and damages alleged herein, Plaintiffs were deprived of the comfort and enjoyment of the services and society of their legal

spouse, and have suffered and will continue to suffer general and special damages including, but not limited to, economic loss, and have otherwise been emotionally and economically injured.

146.     The Plaintiffs' injuries and damages are permanent and will continue into the future.   The Plaintiffs seek general, compensatory, special and punitive damages from the Defendant as alleged herein.

147.     At all relevant times alleged herein Plaintiffs were and are the lawful spouses of Plaintiffs, and, as such, were and are entitled to the comfort, enjoyment, society and services of their spouses.

148.     Plaintiffs sustained injuries caused by Actos and pioglitazone hydrochloride.

149.     Prior to the aforesaid injuries, Plaintiffs were able to and did perform duties as a spouse to Plaintiffs.

150.     Subsequent to the injuries, and as a proximate result thereof, Plaintiffs, were unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and therefore have sustained special damages in an amount which has not as yet been fully ascertained and which will be asserted according to proof at trial.

151.     Subsequent to the injuries, and as a proximate result thereof, Plaintiffs suffered loss of consortium, including, but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and have suffered severe mental and emotional distress and general nervousness as a result thereof.

152.     As the above referenced conduct complained of in this Complaint of Defendants was and is vile, base, willful, malicious, fraudulent, oppressive, outrageous, and as said

Defendants, and each of them, demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiffs, such that Plaintiffs, for the sake of example, and by way of punishing said Defendants, seek punitive damages according to proof.

**TENTH CAUSE OF ACTION**
**REDHIBITION**

153.    Plaintiffs re-allege and incorporate here by reference, as though fully set forth at length herein, all of the allegations of all of the preceding paragraphs.

154.    Actos and pioglitazone hydrochloride contains a vice or defect which renders it useless or its use so inconvenient that buyers would not have purchased it.

155.    Defendants sold and promoted Actos and pioglitazone hydrochloride which Defendants placed into the stream of commerce.  Under Louisiana law, the seller warrants the buyer against redhibitory defects, or vices, in the thing sold. La. C.C. art. 2520.  Actos and pioglitazone hydrochloride, sold and promoted by Defendants, possess a redhibitory defect because it was not manufactured and marketed in accordance with industry standards and for is unreasonably dangerous, as described above, which renders Actos and pioglitazone hydrochloride useless or so inconvenient that it must be presumed that a buyer would not have bought Actos and pioglitazone hydrochloride had she known of the defect. Pursuant to La. C.C. art. 2520, Plaintiffs are entitled to obtain a rescission of the sale of the subject product.

156.    Actos and pioglitazone hydrochloride alternatively possess a redhibitory defect because Actos and pioglitazone hydrochloride was not manufactured and marketed in accordance with industry standards and/or is unreasonably dangerous, as described above, which diminishes the value of Actos and pioglitazone hydrochloride so that it must be presumed that a

buyer would still have bought it but for a lesser price.  In this instance, Plaintiffs are entitled to a reduction of the purchase price.

157.     Defendants are liable as bad faith sellers for selling a defective product with knowledge of the defects, and thus, are liable to Plaintiffs for the price of Actos and pioglitazone hydrochloride, with interest from the purchase date, as well as reasonable expenses occasioned by the sale of Actos and pioglitazone hydrochloride and attorney's fees. As the manufacturer of Actos and pioglitazone hydrochloride, under Louisiana law, Defendants are deemed to know that Actos and pioglitazone hydrochloride possessed a redhibitory defect. La. C.C. art. 2545.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief against Defendants, jointly and severally, as follows:

1.      Compensatory damages, in excess of the amount required for federal diversity jurisdiction, and in an amount to fully compensate Plaintiffs for all their injuries and damages, both past and present;

2.      Special damages, in excess of the amount required for federal diversity jurisdiction and in an amount to fully compensate Plaintiffs for all of their injuries and damages, both past and present, including but not limited to, past and future medical expenses, costs for past and future rehabilitation and/or home health care, lost income, permanent disability, including bladder cancer, and pain and suffering.

3.      Double or triple damages as allowed by law;

4.      Attorneys' fees, expenses, and costs of this action;

5.      Pre-judgment and post-judgment interest in the maximum amount allowed by law; and

6.      Such further relief as this Court deems necessary, just, and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury of all claims asserted in this Complaint.

Dated:  October 7, 2014

                                             Respectfully submitted,


                                             HAGANS BURDINE MONTGOMERY
                                             & RUSTAY, P.C.



                                              */s/ Fred Hagans*
                                             Fred Hagans
                                             3200 Travis, Fourth Floor
                                             Houston, Texas 77006
                                             Tel.  (713) 222-2700
                                             Fax  (713) 547-4950

                                             *Lead Attorney for Plaintiffs*

OF COUNSEL:

HAGANS BURDINE MONTGOMERY
& RUSTAY, P.C.

Scott G. Burdine
Carl D. Kulhanek, Jr.
Bernard Lo
3200 Travis, Fourth Floor
Houston, Texas 77006
Tel.  (713) 222-2700
Fax  (713) 547-4950


SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY, LLP

Peter B. Schneider
Benjamin Ruemke
3700 Buffalo Speedway, #1100
Houston, Texas 770098

Tel.  (713) 338-2560
Fax  (866) 505-8036

THE MEYER LAW FIRM, P.C.

Jeffrey D. Meyer
6363 Woodway Drive, Suite 720
Houston, TX  77057
Tel.  (713) 974-4100
Fax  (713) 974-0225

THOMPSON & TREDENNICK LLP

Ted C. Tredennick
6363 Woodway Dr., Suite 965
Houston, Texas 77057
Tel  (713) 917-0024
Fax  (713) 917-0026

BRACEWELL & GIULIANI LLP

Ralph D. McBride
Phillip L. Sampson, Jr.
Heath A. Novosad
Edmund W. Robb IV
Patrick Johnson
711 Louisiana Street, Suite 2300
Houston, Texas 77002
Tel.  (713) 223-2300
Fax  (713) 221-1212